FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ROBERT B.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[2]

                    Defendant.

No.    4:20-CV-05109-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Plaintiff Robert B. appeals the denial of benefits by the Administrative Law

Judge (ALJ). He alleges the ALJ erred by concluding, at step one, that he had

engaged in substantial gainful activity during the alleged period of disability and

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security.

She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42

U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

had not established a continuous 12-month period in which he had not engaged in substantial gainful activity and, therefore, was not disabled. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 17, and denies the Commissioner's Motion for Summary Judgment, ECF No. 25.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied.[13] If the claimant cannot perform past work, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title 2 and Title 16 applications, alleging in both a disability onset date of March 9, 2017.[18] His claims were denied initially and upon reconsideration.[19] An administrative hearing was held by video before Administrative Law Judge Marie Palachuk.[20]

When denying Plaintiff's disability claims, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2023.

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] *Id.* §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 205-13; AR 214-19.

[19] AR 131-35; AR 138-41; AR 142-45.

[20] AR 35-76.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had engaged in substantial gainful activity since January 1, 2018, and did not establish a continuous 12-month period during which he had not engaged in substantial gainful activity.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[21] AR 20.

[22] AR 1-6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

## IV.    Analysis

### A.    Step One: Substantial Gainful Activity

Plaintiff argues the ALJ erred by concluding at step one that 1) he had engaged in substantial gainful activity since January 2018 (i.e., after his alleged onset date) and 2) that there had been no continuous 12-month period after the

---

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (cleaned up).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

alleged onset date during which he had not been engaged in substantial gainful activity.

"Substantial gainful activity is work activity that is both substantial and gainful."[31] "Substantial work activity is work activity that involves doing significant physical or mental activities."[32] "[W]ork may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before."[33] "Gainful work activity is work activity that [a claimant] do[es] for pay or profit."[34] "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."[35]

The concept of substantial gainful activity is inextricably intertwined with the definition of disability itself. "Disability" is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[36] Based

---

[31] 20 C.F.R. § 404.1572.

[32] *Id.* § 404.1572(a).

[33] *Id.*

[34] *Id.* § 404.1572(b).

[35] *Id.*

[36] *Id.* § 404.1505(a).

on this definition, caselaw and applicable regulations explain that both the "inability to engage in any substantial gainful activity" and the "impairment" that renders one unable to engage in substantial gainful activity must exist simultaneously and for the required 12-month period.[37] Thus, to be found disabled, a claimant must have an impairment that is severe enough to preclude substantial gainful activity, and that impairment *and the resulting inability to engage in substantial gainful activity* must last or be expected to last for the required 12-month period.[38]

The required continuous 12-month period runs from the date of onset.[39] "A disability claim will be denied based on evidence that, within 12 months after the onset of an impairment which prevented substantial gainful activity and [before the disability claim has been resolved], the impairment no longer prevents substantial gainful activity."[40] Therefore, if a claimant engages in substantial

---

[37] SSR 73-7c (containing *Alexander v. Richardson*, 451 F.2d 1185 (10th Cir. 1971)).

[38] SSR 82-52.

[39] *Id.* ("Since the Social Security Amendments of 1965, the disabling impairment(s) preventing an individual from engaging in SGA (or any gainful activity) must be expected to result in death, or must have lasted (or be expected to last) for at least 12 continuous months from the date of onset").

[40] 65 FR 42772-01 at 42773.

1

2

gainful activity within 12 months of the alleged onset date, the disability claim will be denied.[41]

3

4

5

6

7

8

9

10

Earnings are the primary consideration when determining whether a claimant has engaged in substantial gainful activity.[42] Congress authorized the Commissioner to prescribe by regulation the criteria for determining when earnings demonstrate the ability to engage in substantial gainful activity.[43] When earnings exceed the minimum criteria set forth by the Commissioner, a rebuttable presumption of substantial gainful activity arises.[44] The adjudicator will use earnings to determine whether a claimant has done substantial gainful activity unless the adjudicator has information from the claimant, the claimant's employer,

11

12

13

14

15

16

[41] *See also* 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.").

17

[42] *Id.* § 404.1574(a)(1).

18

19

20

21

[43] 42 U.S.C. § 423(d)(4)(A) ("The Commissioner of Social Security shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.").

22

[44] *Katz v. Sec'y of Health & Hum. Servs.*, 972 F.2d 290, 293 (9th Cir. 1992).

23

or others that shows not all earnings should be counted.[45] For example, if a claimant's earnings exceed the reasonable value of the work performed, the adjudicator will consider only the part of a claimant's pay that is actually earned.[46]

Moreover, despite earnings, if a claimant's work is done "under special conditions that take into account [the claimant's] impairment … [the adjudicator] may find that it does not show [the] ability to do substantial gainful activity."[47] Examples of special conditions that may relate to a claimant's impairment are listed in 20 C.F.R. § 404.1573(c) and include, but are not limited to, situations in which:

(1) The claimant required and received special assistance from other employees in performing the claimant's work.

(2) The claimant was allowed to work irregular hours or take frequent rest periods.

(3) The claimant was provided with special equipment or was assigned work especially suited to the claimant's impairment.

---

[45] *Id.* "The mere existence of earnings over the statutory minimum is not dispositive." *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990).

[46] 20 C.F.R. § 404.1574(a)(2) (explaining when work is considered "subsidized").

[47] *Id.* § 404.1573(c).

(4) The claimant was able to work only because of specially arranged circumstances, for example, other persons helped the claimant prepare for or get to and from work.

(5) The claimant was permitted to work at a lower standard of productivity or efficiency than other employees.

(6) The claimant was given the opportunity to work despite the claimant's impairment because of family relationship, past association with the employer, or the employer's concern for the claimant's welfare.[48]

Use of one or more of these special conditions is a factor to be considered when determining whether the earnings presumption has been rebutted.[49] Other factors to consider include the time spent working and the quality of a person's performance.[50]

1.    The ALJ's Findings and Plaintiff's Arguments

Here, as stated above, the ALJ found Plaintiff had engaged in substantial gainful activity since January 1, 2018, and that Plaintiff failed to demonstrate 12 continuous months since his alleged onset date during which he had not engaged in substantial gainful activity. The ALJ found—and Plaintiff does not contest—that Plaintiff's earnings during the first quarter of 2018 exceeded applicable substantial

---

[48] 20 C.F.R. § 404.1573(c).

[49] *Katz*, 972 F.2d at 293.

[50] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

gainful activity levels. Because these earnings exceeded substantial gainful activity levels, there is a presumption of substantial gainful activity during the first quarter of 2018.[51]

Plaintiff, however, contends that there is evidence rebutting this presumed substantial gainful activity. Plaintiff submits that his work during the first quarter of 2018 was an "unsuccessful work attempt" because his employer granted him special accommodations that were not granted to other employees and, even with these special accommodations, Plaintiff could not continue the job due to pain and movement restrictions. Therefore, Plaintiff argues he did not engage in substantial gainful activity during the period of March 9, 2017 to the third quarter of 2018—a period greater than 12 months—and he is immediately eligible for benefits.

As for Plaintiff's work after the first quarter of 2018, the ALJ acknowledged that Plaintiff's earnings in the second and third quarter of 2018 fell "just below" substantial gainful activity levels.[52] Even so, the ALJ ultimately concluded that Plaintiff had engaged in substantial gainful activity "since January 1, 2018."[53]

As for work after the third quarter of 2018, Plaintiff argues that his employment during the fourth quarter of 2018 and first quarter of 2019 are

---

[51] *Id.* ("Katz's earnings, which were well above the statutory minimum, lead to a presumption that she was engaged in SGA.") (citing *Keyes*, 894 F.2d at 1056)).

[52] AR 20.

[53] AR 19.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

properly evaluated as a trial work period and argues the ALJ erred by failing to evaluate whether this work qualified as a trial work period.

Plaintiff makes additional arguments alleging the ALJ erred at other steps in the sequential disability analysis. These arguments are addressed in turn.

### 2.    Unsuccessful Work Attempt: First Quarter of 2018

At the administrative hearing, Plaintiff testified he was able to work during the first quarter of 2018 only because he was permitted to work a reduced schedule with 4-hour shifts and was allowed breaks even during these shortened shifts.[54] He also testified he was given more breaks and longer lunches than other employees, he was allowed to leave his shifts early, and he was permitted to stay home entirely on certain days.[55]

At the hearing, during examination of Plaintiff, the following exchange took place:

> Plaintiff's Counsel: We have a letter, so I'm not going to [go] through all the details here from your – Darlene Anderson, your manager at Costa Vida. Looks like you tried to work. She said they allowed accommodations --
> ALJ: I don't have any letter from anybody by the name of Anderson.
> Plaintiff's Counsel: Was it not exhibited?
> ALJ: No, it wasn't exhibited and it's not in the file, the only letter we've received from your office was received three days ago from a [different individual].
> Plaintiff's Counsel: This letter was submitted before that, in May. All right, well, I'll look at that later but in the interest of time

---

[54] AR 64-65.

[55] AR 64-65.

here, what kind of accommodations were you given at your Costa Vida
job?

Plaintiff then went on to explain the accommodations he received that other
employees did not. Plaintiff testified that even with these special accommodations,
he could not continue this work and switched over to a different job to "lighten the
duty."[56]

In her decision, the ALJ rejected that special accommodations were
significant, stating in part:

> Such special conditions, like his work-related income, are relevant in
> determining whether the claimant retains the capacity to perform
> SGA.  The mere fact that the claimant worked less than full-time,
> however, does not mean that his work activity was not SGA.[57]

Plaintiff argues the ALJ oversimplified his argument as he was not merely
arguing that his work activity was not substantial gainful activity because he
worked less than full-time.[58] Rather, Plaintiff argues that, *not only did he work less
than full-time*, but he also received "additional breaks to lie down, longer lunches,
and shorter shifts of just four hours."[59] Plaintiff also says he was permitted to
"miss excessive amounts of time and leave his shift early, which he frequently

---

[56] AR 65.

[57] AR 20.

[58] ECF No. 17 at 13.

[59] ECF No. 17 at 13.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

required and used."[60] It is these special accommodations, Plaintiff says—not merely his less-than-full-time work—that indicate his work was not substantial gainful activity and indicate an inability to engage in substantial gainful activity.[61]

In this regard, the ALJ stated:

> **First, there is no evidence corroborating the claimant's testimony regarding his need for special conditions or accommodations.** Moreover, there is no evidence that the claimant's employment occurred within a sheltered work environment or as a patient in a medical facility. There is no evidence that the claimant required assistance from others in performing his assigned duties, or that he obtained employment because of a family relationship, past association with an employer, or an employer's concern for the claimant's welfare (See 20 CFR 404.1573( c) and 416.973(c)).[62]

The ALJ thus dismissed out of hand Plaintiff's testimony that he needed and used special accommodations, relying on a lack of corroborating evidence. The ALJ relied on a lack of corroborating evidence despite Plaintiff's counsel having

---

[60] ECF No. 17 at 13.

[61] Plaintiff does not argue that he received a subsidy from his employer during the first quarter of 2018. *See* SSR 83-33 at *2-4 (explaining that subsidized work does not count for purposes of determining substantial gainful activity). Instead, he simply argues his work during the first quarter of 2018 was an unsuccessful work attempt and therefore the earnings from that quarter do not show that he is able to do substantial gainful activity. *See* SSR 84-25.

[62] AR 20 (emphasis added).

indicated that Plaintiff's former manager filled out a form explaining the special accommodations he was granted. Apparently, counsel failed to submit that letter to the ALJ prior to the hearing. But, even so, the ALJ was made aware at the hearing that such a form existed and nonetheless chose to rely on a lack of corroborating evidence. Under these circumstances, this was error. It is a claimant's duty to demonstrate that he is entitled to benefits at steps one through four of the disability evaluation and claimants generally have a duty to submit evidence known to them that is relevant to the disability analysis.[63] It is equally true, however, that an ALJ has a special duty to develop the record in Social Security cases, even when a claimant is represented by counsel.[64] This duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[65]

The issue presented in this case is twofold: 1) whether Plaintiff's testimony was sufficient to establish he had worked under special conditions during the first

---

[63] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("The burden of proof is on the claimant as to steps one to four."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

[64] *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

[65] *Id.* at 459-460.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

quarter of 2018 and 2) if not, whether the ALJ should have attempted to develop the record in this regard before dismissing the existence of special conditions based on a lack of corroborating evidence. Because the Court concludes that, under the circumstances presented by this case, the second question is dispositive regardless of the first, it will address only the second question.

Plaintiff's counsel did not realize until the hearing that the document from Plaintiff's former manager had not been submitted for the ALJ's consideration. Although the ALJ mentioned that the document was not in the file, the ALJ did not leave the record open for Plaintiff to supplement the record with the unintentionally omitted evidence; the ALJ then cited the lack of "corroborating" evidence of the special accommodations Plaintiff was granted at his previous job.[66] Thus, the absence of such evidence was significant to the ALJ's finding that Plaintiff had engaged in substantial gainful activity. Yet, knowing that Plaintiff had intended but failed to submit such corroborating evidence, the ALJ failed to request the omitted documentation and instead faulted Plaintiff for failing to submit it. In doing so, the ALJ breached her duty to develop the record fully and fairly by failing to offer Plaintiff the chance to submit the relevant documentation

---

[66] *See Mary V. v. Saul*, No. C19-5068-MAT, 2019 WL 6468572, at *2 (W.D. Wash. Dec. 2, 2019).

after the administrative hearing.[67] Under these circumstances, not having left the record open to allow Plaintiff an opportunity to supplement was error.

This error was not harmless. The disclosed evidence the ALJ failed to request related to whether Plaintiff was granted special conditions in the first quarter of 2018. Whether Plaintiff worked under special conditions at that time is critical to the step one analysis because, if he was granted special conditions, his work may not have been substantial gainful activity and may not have shown the ability to engage in substantial gainful activity. In turn, this means Plaintiff might have been able to establish that he had not engaged in substantial gainful activity from the onset date of March 9, 2017 until the third quarter of 2018. In such a case, the disability evaluation should have proceeded to determine whether Plaintiff was entitled to benefits for that period. In short, the Court cannot determine the ALJ's error "was inconsequential to the ultimate nondisability determination."[68]

---

[67] *Cf. Young v. Saul*, 777 F. App'x 253, 254 (9th Cir. 2019) (ALJ fulfilled duty to develop record by giving the claimant the opportunity to supplement the record after the hearing had concluded); *Hanbey v. Astrue*, 506 F. App'x 615, 616 (9th Cir. 2013) (same); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (same).

[68] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

This conclusion is consistent with applicable regulations that provide the Social Security Administration will "try to resolve" an identified evidentiary insufficiency by asking the claimant or others for more information.[69]

It is also consistent with longstanding caselaw explaining the ALJ's special duty to develop the record in Social Security cases. In *McLeod v. Astrue*, for example, the Ninth Circuit held that the ALJ "erred by not trying to get whatever VA disability rating existed" for a claimant who "testified that he was receiving a VA pension based on unemployability, but that he had no idea whether he had a disability rating."[70] The Ninth Circuit stated that the claimant's testimony "suggest[ed] a likelihood that he had [a disability rating]" and that, "[i]f he did, it might very well matter," even though such a disability rating "is not binding or conclusive."[71]

*Webb v. Barnhart*[72] is another informative example. In *Webb*, the ALJ ended the disability analysis at step two. The Ninth Circuit held that was error, stating that "although Webb ultimately b[ore] the burden of establishing his disability, the ALJ had an affirmative duty to supplement Webb's medical record, to the extent it was incomplete, before rejecting Webb's petition at so early a stage in the

---

[69] 20 C.F.R. § 404.1520b(c)(4) (effective March 26, 2012 to March 26, 2017).

[70] 640 F.3d 881, 885-86 (9th Cir. 2011).

[71] *Id.*

[72] 433 F.3d 683, 687 (9th Cir. 2005).

analysis."[73] The Ninth Circuit found Webb's medical record was ambiguous, and thus the ALJ's duty to supplement the record had been triggered because "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."[74]

Because the ALJ consequently erred at step one, this case must be remanded.

### 3.    Second and Third Quarters of 2018

The ALJ conceded that Plaintiff's "earnings in the second and third quarters of 2018 fell just below SGA levels."[75] Yet, the ALJ clearly found that Plaintiff had engaged in substantial gainful activity during these quarters given her conclusion that Plaintiff had engaged in substantial gainful activity "since January 1, 2018."[76]

In making this finding, however, the ALJ did not explain *why* Plaintiff's work during the second and third quarter of 2018 was substantial gainful activity. As explained above, earnings are the primary guide for substantial gainful

---

[73] *Id.* (cleaned up).

[74] *Id.*; *see also Lewis v. Comm'r of Soc. Sec. Admin.*, 293 F. App'x 495, 496 (9th Cir. 2008) (unpublished) (finding the ALJ erred by not requesting medical source statements from the claimant's physicians).

[75] AR 20.

[76] AR 19.

activity.[77] As provided in 20 C.F.R. § 404.1574, earnings "will ordinarily show that [a claimant] ha[s] *not* engaged in substantial gainful activity" if those earnings "are equal to or less than the amount(s) determined" to constitute substantial gainful activity as set forth in the regulation.[78] An adjudicator "will generally not consider other information in addition to [a claimant's] earnings except" "if there is evidence indicating that you may be engaging in substantial gainful activity."[79]

In this case, the ALJ failed to explain how she arrived at the conclusion that Plaintiff's work during the second and third quarters of 2018 was substantial gainful activity even though Plaintiff's earnings fell below substantial gainful activity levels. On remand, the ALJ must reevaluate whether Plaintiff's work during these quarters was substantial gainful activity and shall set forth her analysis in writing.

4.    Trial Work Period

The ALJ found Plaintiff had engaged in substantial gainful activity during the fourth quarter of 2018 and first quarter of 2019. Plaintiff challenges these findings on the sole ground that his part-time work at Walmart during the fourth quarter of 2018 and first quarter of 2019 constituted a trial work period of less than nine months. The ALJ did not address this argument. Plaintiff argues the

---

[77] SSR 83-33.

[78] 20 C.F.R. § 404.1574(b)(3)(i) (emphasis added).

[79] *Id.* § 404.1574(b)(3)(i)-(ii).

ALJ erred by failing to address this argument and urges the argument should be addressed on remand. However, a claimant is eligible for a trial work period only after becoming entitled to benefits by being adjudged disabled within the meaning of the Social Security Act.[80] Because Plaintiff has not been adjudged disabled, he is not eligible for a trial work period.

## B. Plaintiff's Additional Challenges

Plaintiff also argues the ALJ erred by improperly rejecting medical opinions, failing to find severe impairments at step two, conducting an improper step-three analysis, and improperly rejecting Plaintiff's symptom reports. However, the ALJ did not reach these issues and the Court, therefore, does not review them.

---

[80] 42 U.S.C. § 422(2) ("[A]ny services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased"); 20 C.F.R. § 404.1592(a) ("The trial work period is a period during which you may test your ability to work and still be considered disabled."); § 404.1592(d) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits, child's benefits based on disability, or widow's or widower's or surviving divorced spouse's benefits based on disability"). *See Cieutat v. Bowen*, 824 F.2d 348, 358-59 (5th Cir. 1987); *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988); *Wyatt v. Barnhart*, 349 F.3d 983, 985-96 (7th Cir. 2003); *Conley v. Bowen*, 859 F.2d 261, 262 (2d Cir. 1988); *see also* SSR 82-52 at *2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**C.    Remand for Further Proceedings: The ALJ Must Reevaluate**

On remand, the ALJ shall permit Plaintiff 45 days to file additional evidence. The ALJ shall accept and consider such evidence and shall conduct anew the five-step disability analysis and issue a new decision. The ALJ's new decision shall set forth in writing an analysis of whether Plaintiff's work during the first quarter of 2018 was under special conditions and, if so, whether that work constituted substantial gainful activity or shows the ability to engage in substantial gainful activity or was instead an unsuccessful work attempt.[81] The ALJ's new decision shall also set forth in writing an analysis of whether Plaintiff's work during the second and third quarters of 2018 constitutes substantial gainful activity given Plaintiff's earnings do not rise to the level of substantial gainful activity.

If the ALJ finds there has been at least a 12-month period during which Plaintiff has not engaged in substantial gainful activity between the alleged onset date and the third quarter of 2018, the ALJ shall complete the five-step analysis for that period and determine whether Plaintiff is entitled to a closed period of disability benefits.[82]

---

[81] *See* 20 C.F.R. § 404.1574(c) (setting forth requirements and legal import of an unsuccessful work attempt).

[82] "A closed period of disability is the period of disability with a definite beginning date and a definite ending date that the adjudicator establishes at the time of

As noted above, the Court rejects Plaintiff's sole challenge to the ALJ's conclusion that Plaintiff engaged in substantial gainful activity during the fourth quarter of 2018 and the first quarter of 2019 because Plaintiff was not entitled to a trial work period during these periods. The issues for the ALJ on remand, therefore, are limited to the time period between the alleged onset date and the third quarter of 2018, absent evidence of special accommodations during and after the fourth quarter of 2018.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of

---

adjudication. ... A claimant may be entitled to a closed period of disability if the evidence shows he or she was disabled or blind for a continuous period of not less than 12 months, but based on the evidence is no longer disabled or blind at the time of adjudication. The claimant must meet all other requirements for disability or blindness." SSA POMS DI 25510.001, Closed Period of Disability. *See also* 20 C.F.R. §§ 404.1594, 416.994.

Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 1st day of September 2021.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge